. ROBERT H. THAYER ET AL. v. WEBSTER TREAT.

1. An attachment can be issued, by force of the statute, against one of several joint debtors, when all of such debtors are non-residents.
2. In such proceeding, if the defendant appears and pleads the non-joinder of the omitted parties, such plea will not be sustained; but the plaintiff cannot amend and join the omitted defendants by force of the thirty-seventh section of the practice act.

In *assumpsit*.    On attachment.

On case certified from Hudson Circuit Court.

The above-stated cause is *assumpsit* for ships' stores, and was commenced by an affidavit in attachment, made by Robert H. Thayer, one of the plaintiffs, that Webster Treat owed to the plaintiffs the sum of $266.10, and was a non-resident. The affidavit was filed on August 11th, 1873, and a writ of attachment tested on that day, and returnable August 26th, 1873, was issued by George H. Ropes, attorney, in the ordinary form, against the rights and credits, moneys and effects, goods and chattels, lands and tenements, of Webster Treat.

Under this writ, the sheriff of Hudson county, on August 12th, 1873, levied on the schooner Ocean Ranger, as the property of the defendant, had the vessel appraised at $2000, and on August 23d, returned the writ, with the levy, inventory, and appraisement annexed.

On August 14th, 1873, a bond in the penal sum of $4000 was executed by Smith W. Haines, of Jersey City; Paul A.

Cartwright, of Elizabeth, and Charles L. Whitney, of the State of Maine, to the plaintiffs, conditioned that the defendant should perform the judgment of the court, or the property, or its value, be forthcoming for the satisfaction of such judgment, and was duly filed, and the schooner was released.

On September 1st, 1873, an appearance was entered for the defendant by ——— ———, attorneys, and on February 24th, 1874, another appearance was entered for the defendant, by the same attorneys.

On December 4th, 1874, a declaration was filed out of time, by consent, in the following terms:

"Hudson Circuit Court of the twenty-sixth day of August, in the year of our Lord one thousand eight hundred and seventy-three.

"Hudson County, ss.—Webster Treat, against whose rights and credits, moneys and effects, goods and chattels, lands and tenements, the writ of attachment herein was issued, having, on the first day of September, eighteen hundred and seventy-three, caused his appearance to be entered at the suit of Robert H. Thayer and George M. Sargeant, the plaintiffs herein, of a plea of trespass on the case upon promises, thereupon the plaintiffs, by ——— ———, their attorney, complain:

"For that, whereas, the said Webster Treat, the defendant herein, and William H. Smith, George R. Lancaster, Michael Gilligan, Calvin Seavey, and Pierre McConville, who, with said defendant, were owners of the brig William H. Parks, heretofore, to wit, on the twenty-third day of October, in the year of our Lord one thousand eight hundred and sixty-nine, at New York, in the county and State of New York, to wit, at Jersey City, in the county of Hudson aforesaid, were indebted to the plaintiffs, then partners under the firm name of Thayer & Sargeant, in the sum of four hundred dollars, for goods, wares, and merchandise, before that time sold and delivered by the plaintiffs to said owners of said brig, for the use of said brig, at their request."

The declaration continues in the usual form of the common counts, against "said owners."

To this declaration, the defendant Treat demurred, and on March 13th, 1875, judgment for defendant was given on the demurrer by consent, with leave to the plaintiffs to declare anew on payment of costs.

The plaintiffs paid costs, and on April 14th, 1875, filed a declaration in the form of the common counts, against Webster Treat alone. The defendant Treat, on December 22d, 1875, pleaded in abatement, in the following terms: "And the said defendant, by ——— ———, his attorneys, comes and defends the wrong and injury, &c., when &c., and prays judgment of the said writ and declaration, because he says that the said several supposed promises and undertakings in the said declaration mentioned, if any such ever made, were, and each of them, made by the said defendant, jointly with William H. Smith, George R. Lancaster, Michael Gilligan, Calvin Seavy, and P. McConville, who are still living, to wit, at Jersey City aforesaid, and not by the said defendant alone, and this the said defendant is ready to verify; wherefore, inasmuch as they, the said William H. Smith, George R. Lancaster, Michael Gilligan, Calvin Seavey and P. McConville, are not named in the said writ and declaration, together with the said defendant, he, the said defendant, prays judgment of the said writ and declaration, and that the same be quashed."

On January 21st, 1876, the plaintiffs filed an amended writ of attachment against the estate of all the owners, tested and returnable, as in the original writ, and issued a summons in *assumpsit*, in the Hudson Circuit Court, returnable January 28th, 1876, in favor of Robert H. Thayer and George M. Sargeant, against Webster Treat, William H. Smith, George R. Lancaster, Michael Gilligan, Calvin Seavey, and Pierre McConville. The sheriff made return that none of the defendants could be found in his county.

On January 21st, 1876, the plaintiffs filed an amended declaration, in the following terms:

Thayer v. Treat.

"Hudson County, ss.—Webster Treat, against whose rights and credits, moneys and effects, goods and chattels, lands and tenements, the writ of attachment herein was issued, having, on the first day of September, eighteen hundred and seventy-three, caused his appearance to be entered, at the suit of Robert H. Thayer and George M. Sargeant, the plaintiffs herein, and having given bond and accepted a declaration from said plaintiffs, in a plea of trespass on the case upon promises, and having pleaded in abatement the non-joinder of William H. Smith, George R. Lancaster, Michael Gilligan, Calvin Seavey, and Pierre McConville, (who is called, in said plea, P. McConville,) as defendants, thereupon the plaintiffs, by —————— ———, their attorney, by this their amended declaration complain :

"For that, whereas, the said Webster Treat, William H. Smith, George R. Lancaster, Michael Gilligan, Calvin Seavey, and Pierre McConville, owners of the brig William H. Parks, the defendants, heretofore, to wit, on the fourth day of August, in the year of our Lord one thousand eight hundred and seventy-three, at New York, in the county and State of New York, to wit, at Jersey City, in the county of Hudson aforesaid, were indebted, as such owners, to the plaintiffs, in the sum of five hundred dollars," &c., in the form of the common counts.

The attorney for the defendant moved to strike out the amended declaration, and, after argument, the motion was granted.

The question of law arising in the foregoing cause, and reserved for review, was the following :

Whether Section 39 of "An act to regulate the practice of courts of law," authorized the plaintiffs to amend their writ and declaration, or either of them, by adding the names of the persons named in the plea in abatement as joint contractors.

Argued at November Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON, and REED.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This is a case for the advisory opinion of this court.

The statement of facts shows that the plaintiffs caused a writ of foreign attachment to be issued against the defendant, who, giving the statutory bond, entered an appearance; that, thereupon, the plaintiffs filed a declaration, which, in the commencement, recited that the attachment had gone against the defendant, Webster Treat, but, in the body of it, set up that the defendant, together with five other persons, was indebted to the plaintiffs, in a certain sum of money, for goods sold and delivered.   This declaration was demurred to, and it is stated that judgment for the defendant was given on this demurrer by consent, with leave to the plaintiffs to declare anew on the payment of costs.   It should have appeared in this pleading that the persons who were thus named as joint creditors with the plaintiffs, were, at the time of the issuing of the writ, non-residents, but, from the subsequent proceedings in the case, it is to be inferred that the error that both parties thought existed in this pleading, was, that it laid a joint cause of action against several, in a suit in which there was but a single defendant on the record, and this, I think, is the fundamental mistake which has led to bad pleading on both sides.

By the course of the common law, it was an error if there was any variance between the writ and declaration with respect to the parties to the action; but this is not a procedure under that system, but, on the contrary, is altogether the creature of the statute with respect to its origin and regulation; consequently, the only pertinent inquiry is, what does the act relating to attachments say upon this subject? In the sixth section of that law, the answer to this question is given in these words, viz.:   "That when two or more are jointly bound or indebted, either as joint obligors, partners, or otherwise, the writ of attachment may be issued against the separate or joint estate, or both, of such joint debtors, or any of them, either by his or their proper name or names,

or by the name or style of the partnership, or by whatever other name or names such joint debtors shall be generally known and distinguished in this state, or against the heirs, executors or administrators of them, or any of them; and the estate so attached, whether it be separate or joint, shall be liable to be sold or assigned for the payment of such joint debt."

This section, as it seems to me, can be read, with regard to the particular under examination, in but a single sense—that is, that in case of a joint debt, the attachment may be issued against any one of such joint debtors. Neither the language nor the regulations established by the clause, will bear any other interpretation. The subject matter of the whole section is a direction how to proceed in the case " where two or more are jointly bound or indebted," and the expression, referring to the "joint debtors, or any of them," that the attachment may be in " either his or their proper name or names," cannot be made to mean anything, so far as the singular pronoun is concerned, unless we understand it to authorize the process to be issued against any of the debtors, as well as all of them. So the authority given to purchase the writ against " the heirs, executors or administrators " of the joint debtors, or any of them, bears conclusive evidence to the same purpose. It can hardly be pretended that it was the intention to authorize a proceeding jointly against the executors of a deceased debtor and the surviving debtors, a combination that would be incongruous from first to last, in the pleadings, trial, and judgment. Nor is any inconvenience to be apprehended in giving to this section the meaning which its terms appear to demand. If three persons are the debtors, and the attachment proceeds against one alone, it is the estate of that one which will be affected, for it is his interest in the property attached that is levied on, and, consequently, such interest alone can be sold.

But this is not a question of first impression. In the case of Curtis v. Hollinshead, 2 Green 402, this section was critically examined by this court, and the terms were expounded in the

sense just expressed. In that case, the court was called upon to answer the inquiry whether an attachment could be issued against a non-resident member of a partnership, the other members being residents of the state; and, in negativing such right, Chief Justice Hornblower, expressing the views of the court, uses this language, viz.: "Nor can an attachment issue against a non-resident partner, if the other partners reside here; but if all the partners reside abroad, then, under the twenty-seventh section (which is the sixth section of the present law), an attachment may issue against all or any of them, or, if dead, then against their non-resident representatives."

This, as has been said, I take to be the true reading of this section; and it will be perceived that its effect is to make several, as well as joint, so far as touches the attachment act, all contracts which are joint, when all the joint debtors reside out of this state. The consequence of this view is, that a declaration is not faulty which shows that an attachment has been issued against one of several joint debtors, and also sets out a joint cause of action, the reason being that the proceeding is warranted by the statute in question. By such a course of pleading, the plaintiffs show that they are pursuing their suit according to the statutory regulation, for the court will, *ex-officio*, notice, in weighing the declaration, the disjunctive effect of the act on the cause of action. At the trial, a joint cause of action of necessity would appear, and, therefore, to avoid a disagreement between the *allegata* and *probata*, it would seem proper to allege the real facts in the pleading. The original declaration in this case appears to have been fashioned on this theory, and, consequently, was correct in form and substance.

But the plaintiff, submitting to the demurrer, gave up this declaration, and filed a new one, which suppressed all allusion to the joint contract, and laid his cause of action against Treat alone. To this, the defendant pleaded the non-joinder of the other defendants, in abatement.

It will follow, from the exposition that I have given of the sixth section of the attachment act, that this plea was bad, for, by showing simply, as it did, that by force of this law, the plaintiffs were proceeding against one, alone, of several joint debtors, the defendant did not demonstrate any error. To make the proceeding objectionable, it was necessary to manifest that some of the omitted joint debtors were residents of this state at the time of the inception of the proceeding. But the plaintiffs again yielded to this objection of their adversary, and filed an amended declaration, bringing in the parties who are named as omitted defendants, in the plea in abatement. This course is attempted to be justified by virtue of the thirty-ninth section of the practice act, which authorizes the amendment of the declaration in case the non-joinder of any person, as a co-defendant, is pleaded in abatement.

Whether this clause of the practice act applies, under the circumstances above stated, is the question now propounded to this court for its advisory opinion.

My conclusion is, that this statutory provision has no relation to a proceeding begun under the attachment act. The language of the section, in terms, repels such a construction. It says, "in any action on contract, *commenced by summons,* where the non-joinder," &c., and thus is made to embrace, very plainly, but a single class of cases. It would be an act of legislation, and not of interpretation, for the court to extend it to other classes of cases. It does not comprehend a suit commenced by a *capias;* why, then, is it to be said that it takes in a proceeding taking its rise in the process of attachment? I find nothing in the attachment law favoring the view that this section of the practice act should be applied to it. When defendants are joined to the suit under this section, they become parties to the suit, and judgment will pass against them personally, if the plaintiff is successful; but there is no such result as this indicated as a legislative purpose, in the provisions of the law authorizing suits against non-resident debtors. Indeed, all the indications are to the contrary: the writ is to be levied on the estate of the

defendant or defendants, alone, named in it; the advertisement is to be of a suit between the plaintiff and such party or parties; so the defendants named are to appear, and then give bond, and if the goods are returned, it is only their interest in them that can be sold. These aspects are averse to the idea that new defendants can be joined to the suit during its progress. Nor does the expression in the thirty-eighth section, that after an appearance has been effected, the suit "shall proceed, in all respects, as if commenced by summons," convey a different import, the effect of that clause being simply to regulate the order of the proceedings, without in anywise affecting the antecedent steps taken in the cause. One of the prominent features of the attachment act appears to be its contrivances for the purpose of giving notice to the parties interested, of the pendency of the proceeding: it requires a notice of the issuing of the attachment, and against whose estate, to be published in a newspaper, and a copy set up in the clerk's office; to allow, therefore, the party named as defendant to bring into the proceeding, and to affect by the result, other persons, not named, and not notified, would seem in contravention of the intent here manifested, to make known to all persons whose property was sought to be affected, that such writ had been sued out. It should require a very plain expression of intention on the part of the framers of this law, to induce the court to conclude that it was designed to allow a non-resident debtor, whose property was attached, to subject, by appearing to the suit, other non-residents to the jurisdiction of the courts of the state, without any apparent assent on their part.

I think the Circuit Court should be advised that the section referred to does not apply to a proceeding commenced by attachment.